# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| KENNETH L. ASHCRAFT,<br>Petitioner, | Case No. 1:13-cv-195 |
| vs. | Beckwith, J.<br>Bowman, M.J. |
| WARDEN, LEBANON<br>CORRECTIONAL INSTITUTION,<br>Respondent. | **REPORT AND<br>RECOMMENDATION** |

Petitioner, an inmate in state custody at the Lebanon Correctional Institution in Lebanon, Ohio, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition and respondent's return of writ. (Docs. 1, 10).

## I.    FACTUAL BACKGROUND

The Ohio Court of Appeals, Twelfth Appellate District set forth the following summary of facts[1] that led to petitioner's convictions and sentence:

> {¶1} This case arises out of appellant's alleged sexual abuse of five female minors over the course of 15 years, from 1989 to 2004. In August 2008, appellant was charged under a 16-count indictment with the following felony sex offenses: one count of corruption of a minor against C.M. during the time period of 1989 to 1990; one count of rape against R.T. in 1991; two counts of rape against K.D. during the time period of 1993 to 1994; two counts of corruption of a minor against K.D. during the time periods of 1994 to 1995 and 1995 to 1996; one count of felonious sexual penetration against C.S. in 1995; six counts of rape against C.S. during the time period of 1996 to 2001; one count of unlawful sexual conduct with a minor against C.S. during the time period of 2001 to 2003; and two counts of rape against A.M. during the time period of 2003 to 2004.
>
> . . .

---

[1] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." In the absence of clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted below, those findings are presumed to be correct. *See McAdoo v. Elo,* 365 F.3d 487, 493-94 (6th Cir. 2004).

{¶4} During its case in chief, the state called each of the five alleged victims to testify. First, K.D. testified that she met appellant in 1993 when appellant rented a room from her friend's mother. K.D. indicated she was 11 years old at the time, and that appellant was 27 years old. According to K.D., appellant began socializing with her and later asked her to be his girlfriend. K.D. indicated that the "relationship became more intimate," and that the two engaged in oral sex, as well as vaginal intercourse. K.D. testified that she and appellant continued to engage in such sexual acts until she turned 15 years old and the "relationship" ended.

{¶5} Second, R.T. testified that she met appellant through her sister's friend when she was nine years old. She indicated that appellant was "an adult" at the time. R.T. testified that in 1991, when she was ten years old, she accompanied appellant, along with a friend and her boyfriend, on a swimming and paddle boating excursion. According to R.T., a "truth or dare" game later ensued in appellant's vehicle, during which appellant forcibly engaged in vaginal intercourse with her. R.T. indicated that she did not see appellant after the incident.

{¶6} Third, A.M. testified that she met appellant when she was six years old, through appellant's daughter with whom she was friends. A.M. indicated that when she was 11 or 12 years old, she, along with her mother and two brothers, moved in with appellant. According to A.M., appellant began "touching" her at that time. Specifically, A.M. testified that on a number of occasions, appellant touched her vagina when he thought she was sleeping. A.M. also testified that she frequently slept in appellant's bed with him, and that appellant regularly engaged in vaginal intercourse with her. She testified that she began to sleep in pants and a belt to prevent the incidents, but that appellant would take them off and tell her the garments would "irritate her burns." A.M. testified that appellant threatened to hurt her family if she told anyone about the incidents.

{¶7} Fourth, C.S. testified that appellant is her biological father, but that she had no contact with him until she was seven years old, at which time she moved in with appellant. C.S. testified that appellant began to touch her "inappropriately" by placing his hands down her pants, and that appellant digitally penetrated her vagina. C.S. indicated that appellant later engaged in vaginal intercourse with her when she was eight years old. C.S. testified that on one occasion, appellant tied her to a night stand and forcibly engaged in vaginal intercourse with her. C.S. testified that appellant engaged in vaginal intercourse with her on a regular basis from 1996 to 2003, when she disclosed the incidents to other household members.

{¶8} Finally, C.M. testified that she met appellant in 1989, when she was 12 years old. C.M. testified that she met appellant at a gas station and that he began "flirting" with her. The two began socializing, and eventually engaged in vaginal intercourse at a local motel. C.M. indicated that she and appellant engaged in

> vaginal intercourse on several other occasions, and that she became pregnant by appellant when she was 13 years old. C.M. testified that she gave birth to a son on November 30, 1990, and that she and appellant "split up" after the child's birth.
>
> {¶9} Appellant testified in his own defense at trial, disputing that he engaged in any inappropriate sexual behavior with any of the victims. Specifically, appellant denied engaging in any sexual acts with R.T., K.D., C.S. and A.M. With respect to C.M., appellant admitted having sexual intercourse with her and fathering her child, but maintained that C.M. had a "fake I.D." at the time he met her indicating she was 18 years old.

(Doc. 10, Ex. 7).

## II.  PROCEDURAL HISTORY

### State Trial Proceedings

On August 20, 2008, the Butler County, Ohio grand jury returned a sixteen-count indictment charging petitioner with three counts of corruption of a minor, eleven counts of rape, one count of felonious sexual penetration, and one count of unlawful sexual conduct with a minor. (Doc. 10, Ex. 1). Petitioner, through counsel, entered a plea of not guilty to all counts charged in the indictment.

Petitioner filed several pretrial motions. First, on September 16, 2008, petitioner filed a motion to sever the counts in the indictment and a motion in limine. (Doc. 10, Ex. 2). Petitioner also subsequently filed a motion to suppress statements given to law enforcement and any evidence seized as a result of those statements. (Doc. 10, Ex. 3). On October 7, 2008, petitioner also filed a motion to dismiss counts one through ten of the indictment because he claimed they were time-barred. (Doc. 10, Ex. 6). On October 14, 2008, the trial court denied petitioner's pretrial motions and the case proceeded to trial. (Doc. 10, Ex. 8, 9, 10).

On November 14, 2008, petitioner was found guilty of all charges. (Doc. 10, Ex. 11). Petitioner was sentenced on December 9, 2008. (Doc. 10, Ex. 13).

3

## Direct Appeal

On December 17, 2008, through counsel, petitioner filed a notice of appeal to the Ohio Court of Appeals. (Doc. 10, Ex. 14). Petitioner raised the following two assignments of error:

1. The trial court abused its discretion in denying appellant's motion to sever and in denying appellant separate trials as to separate victims from different time periods.

2. Prosecution of appellant in counts one through ten was barred by the statute of limitations.

(Doc. 10, Ex. 15). On October 5, 2009, the Ohio Court of Appeals issued a judgment entry affirming the judgment of the trial court. (Doc. 10, Ex. 17).

## Delayed Appeal to the Ohio Supreme Court

On December 26, 2012, petitioner filed a pro se notice of appeal and motion for a delayed appeal to the Ohio Supreme Court. (Doc. 10, Ex. 18, 19). The Ohio Supreme Court denied petitioner's motion for a delayed appeal on February 6, 2013. (Doc. 10, Ex. 20).

## Federal Habeas Corpus

Petitioner filed the instant federal habeas corpus action on March 21, 2013. (Doc. 1). Petitioner raises two grounds for relief in the petition:

**GROUND ONE**: Trial Court refused to conduct separate Trials.

Supporting Facts: This case stems from five separate allegations of improper sexual conduct with 5 separate females at separate times, during a period of time of over 15 years. Each alleged incident is unrelated to the others in any way, except that they involve the same defendant. The cumulative effect of prosecution of all five cases together, rather than each on its own merits, denied this Petitioner a Fair Trial and the Due Process of Law guaranteed by the 5th and 14th Amendments to the United States Constitution.

**GROUND TWO**: Counts 1-10 of Petitioner's Indictment were barred by the Statute of Limitations.

Supporting Facts: Despite the fact that this Petitioner was tried in 2008, Counts

1-10 allegedly occurred from 1989 to 1998. During that time, Ohio Revised Code 2901.13(A)(1) imposed a six-year Statute of Limitations, which both the Trial Court and the Court of Appeals allowed to be ignored, and imposed a Judicial Rule over the legislative intent retroactively, and in violation of ex post facto, violating this Petitioner's rights to a Fair trial and the Due Process of Law, guaranteed by the 5th and 14th Amendments to the United States Constitution.

(Doc. 1, pp. 5-6).

Respondent has filed a return of writ in opposition to the petition. (Doc. 10). Respondent contends that petitioner's grounds are not cognizable and procedurally defaulted.[2]

## III. THE PETITION SHOULD BE DENIED

Under 28 U.S.C. § 2244(d)(1), as amended by § 101 of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, a person in custody pursuant to the judgment of a state court must file an application for a writ of habeas corpus within one year from the latest of:

>  (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> 
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> 
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> 
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Under 28 U.S.C. § 2244(d)(2), the limitations period is tolled during the pendency of a properly filed application for state post-conviction relief or other collateral review.

---

[2] On April 3, 2014, respondent filed a motion to amend/correct the return of writ, which was granted by separate order. (Doc. 17). Therein, respondent contends that the petition is time-barred.

Petitioner has not argued, nor is there evidence in the record to suggest, that the provisions set forth in §§ 2244(d)(1)(B) through (D) apply to his claims. Petitioner has not alleged that a State created impediment prevented him from filing the instant petition or that his claims are governed by a newly recognized constitutional right made retroactively applicable to his case. Furthermore, petitioner's grounds for habeas relief are based on alleged errors that occurred during the trial proceedings or on direct appeal. Since petitioner was aware of the facts underlying his claims by the close of trial and before the conclusion of the direct review proceedings, his grounds for relief are governed by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1)(A), which began to run when petitioner's conviction became final "by the conclusion of direct review or the expiration for the time for seeking such review."

In this case, petitioner's conviction and sentence became final on November 19, 2009, when the 45-day period expired for filing a timely appeal to the Ohio Supreme Court from the Ohio Court of Appeals' October 5, 2009 decision affirming the trial court's final judgment entry of conviction and sentence. *See* Ohio S.Ct.Prac.R. 6.01(A)(1). Although petitioner tried to pursue a delayed appeal to the Ohio Supreme Court, it is well-settled that unsuccessful motions for leave to file a delayed appeal, such as the one filed by petitioner in this case, do not restart the running of the statute under § 2244(d)(1)(A), but rather only can serve to toll an unexpired limitations period under § 2244(d)(2). *See, e.g., Black v. Warden, Lebanon Corr. Inst.,* No. 1:12cv821, 2013 WL 3811774, at *5 (S.D. Ohio July 19, 2013) (Bowman, M.J.) (Report & Recommendation) (and numerous cases cited therein), *adopted*, 2013 WL 4067818 (S.D. Ohio Aug. 12, 2013) (Black, J.); *Taher v. Warden, Warren Corr. Inst.,* No. 1:12cv400, 2013 WL 485789, at *6 (S.D. Ohio Feb. 6, 2013) (Litkovitz, M.J.) (Report & Recommendation), *adopted*, 2013 WL 811867 (S.D. Ohio Mar. 5, 2013) (Bertelsman, J.) (and numerous cases cited therein);

6

*Sayles v. Warden, London Corr. Inst.,* No. 1:11cv524, 2012 WL 3527226, at *5 n.1 (S.D. Ohio July 17, 2012) (Wehrman, M.J.) (Report & Recommendation) (and numerous cases cited therein), *adopted*, 2012 WL 3527140 (S.D. Ohio Aug. 15, 2012) (Dlott, J.); *see also Applegarth v. Warden, North Cent. Corr. Inst.*, 377 F. App'x 448, 449-50 (6th Cir. 2010) (and Sixth Circuit cases cited therein).  *Cf. Little v. Warden, Warren Corr. Inst.*, No. 1:10cv468, 2011 WL 2358565, at *4 n.2 (S.D. Ohio May 16, 2011) (Litkovitz, M.J.) (Report & Recommendation) (noting that although the Supreme Court held in *Jimenez v. Quarterman*, 555 U.S. 113, 120-21 (2009), that the *granting* of a delayed appeal motion restores the pendency of the direct appeal, thereby rendering the conviction non-final under § 2244(d)(1)(A), a delayed appeal motion that is *denied* does not restart the limitations period), *adopted,* 2011 WL 2293316 (S.D. Ohio June 9, 2011) (Bertelsman, J.).  *See generally Gonzalez v. Thaler*, __ U.S. __, 132 S.Ct. 641, 653-54 (2012) (distinguishing *Jimenez*, where the Court had adopted "the out-of-time appeal's date of finality over the initial appeal's date of finality," in holding that the petitioner's state conviction became final under § 2244(d)(1)(A) "when his time for seeking review with the State's highest court expired").  Therefore, the statute commenced running on November 20, 2009, one day after petitioner's conviction became final within the meaning of § 2244(d)(1)(A), and expired one year later absent application of statutory or equitable tolling principles.

During the one-year limitations period, petitioner was entitled to statutory tolling under § 2244(d)(2) based on any pending "properly filed" applications for state post-conviction relief or other collateral review.  *See* 28 U.S.C. § 2244(d)(2).  *See also Holland v. Florida,* — U.S. —, 130 S.Ct. 2549, 2554 (2010); *Allen v. Siebert,* 552 U.S. 3, 4 (2007) (*per curiam*); *Vroman v. Brigano,* 346 F.3d 598, 602 (6th Cir. 2003).

No statutory tolling applies under Section 2244(d)(2) to extend the limitations period in this case. The statute of limitations had run for 1126 days before petitioner filed his December 20, 2012 motion to file a delayed appeal with the Ohio Supreme Court. Because petitioner did not have any properly filed post-conviction motions pending during the one-year statute of limitations, statutory tolling does not serve to extend the limitations period. *See Vroman,* 346 F.3d at 602.

The AEDPA's statute of limitations is subject to equitable tolling, *see Holland*, 130 S.Ct. at 2560, "when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond the litigant's control." *Hall v. Warden, Lebanon Corr. Inst.,* 662 F.3d 745, 749 (6th Cir. 2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)), *petition for cert. filed,* Nos. 11-10643, 11A869 (U.S. Apr. 25, 2012). Equitable tolling is granted "sparingly." *Id.* (quoting *Robertson*, 624 F.3d at 784). A habeas petitioner is entitled to equitable tolling only if he establishes that (1) "he has been pursuing his rights diligently;" and (2) "some extraordinary circumstance stood in his way and prevented timely filing." *Id.* (quoting *Holland*, 130 S.Ct. at 2562 (internal quotations omitted)); *see also Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005). Although the Sixth Circuit previously utilized a five-factor approach in determining whether a habeas petitioner is entitled to equitable tolling, *Holland*'s two-part test has replaced the five-factor inquiry as the "governing framework" to apply. *Hall*, 662 F.3d at 750 (citing *Robinson v. Easterling,* 424 F. App'x 439, 442 n.1 (6th Cir. 2011)). "With *Holland* now on the books, the 'extraordinary circumstances' test, which requires both reasonable diligence and an extraordinary circumstance, has become the law of this circuit." *Id.*; *see also Patterson v. Lafler,* 455 F. App'x 606, 609 n.1 (6th Cir. 2012).

In this case, petitioner indicates that his appellate counsel failed to inform him of the Ohio Court of Appeals' October 5, 2009 decision. (Doc. 16, p. 2). According to petitioner, he was illiterate and unable to have other inmates look up his case "because sex offenders are targeted by prison gangs for intense persecution both mentally and physically." *Id.* Petitioner claims that it was not until late 2012 that he determined that his appeal was denied, when he was "transferred to a cell with an inmate who assisted others with their legal work." *Id.* at 3.

The Sixth Circuit has found equitable tolling to be warranted in circumstances where a petitioner is not informed of a state court decision. In *Miller v. Collins*, 305 F.3d 491 (6th Cir. 2002), the petitioner was not notified that his post-conviction application was denied by the Ohio Court of Appeals until six months after the decision. *Id.* at 492–93. Finding that petitioner lacked notice that the AEDPA clock was running and that he was diligent in pursuing his claims, the Sixth Circuit held that the statute of limitations should be equitably tolled during the six months between the decision and when the petitioner was notified. *Id.* at 495–96.

To the extent that petitioner contends that he is entitled to equitable tolling during the time he remained uninformed of the denial of his direct appeal his argument is without merit. In contrast to *Miller*, petitioner has not demonstrated that he diligently pursued his rights. In reaching its decision, the *Miller* court found that the petitioner "acted diligently to protect his rights both before and after receiving notice." *Id.* at 496. Specifically, the court found that petitioner did not "passively await" a decision on his post-conviction application, noting that the petitioner filed a motion to proceed to judgment within nine months of filing.[3] *Id. See also Calhoun v. Preslesnik*, No. 1:09-cv-468, 2010 WL 910261, at *2 (W.D. Mich. Mar. 12, 2010)

---

[3] The Sixth Circuit reasoned that "[g]iven that the Ohio Court of Appeals considered Miller's sufficiency of the evidence appeal for five months, it was not unreasonable that Miller waited nine months before asking the court to rule on his application." *Id.* at 496. Petitioner has made no such showing in the instant case.

(noting that the petitioner sent four letters to the state supreme court requesting the status of his case in finding that the petitioner satisfied his burden of proving he did not have notice of the denial of his application for leave to appeal). In the instant case, petitioner filed his direct appeal on December 17, 2008. (Doc. 10, Ex. 14). On December 26, 2012, over three years after the October 5, 2009 denial of his direct appeal, petitioner filed a motion for delayed appeal to the Ohio Supreme Court. (*See* Doc. 10, Ex. 17, 18). Therein, petitioner noted that he "does not recall having been given any actual notice of the State Court of Appeals' decision" and, because of his being illiterate at the time, that "he was unaware of his duties or rights until November 20, 2012," when he was transferred to a cell shared by an inmate law clerk. (Doc. 10, Ex. 18). According to petitioner, his cellmate verbally explained for the first time his duties and right to appeal. *Id.* However, in waiting over three years to inquire about the status of his appeal, petitioner "failed in his duty to monitor the status of his appeal" and was not sufficiently diligent to warrant equitable tolling of the limitations period in this case. *Winkfield v. Bagley*, 66 F. App'x 578, 583–84 (6th Cir. 2003). *See also Keeling v. Warden*, 673 F.3d 452, 463–64 (6th Cir. 2012); *Elliot v. Dewitt*, 10 F. App'x 311, 312–13 (6th Cir. 2001).

Accordingly, petitioner is not entitled to equitable tolling. Because equitable tolling principles do not apply to extend the limitations period in this case, the instant habeas corpus petition, filed long after the statute of limitations had run its course, is time-barred.

In sum, the undersigned concludes that under the applicable one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1)(A), the petition is time-barred and should be **DENIED** with prejudice.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice on the ground that it is time-barred under 28 U.S.C. § 2244(d).

2. A certificate of appealability should not issue with respect to the statute of limitations issue addressed herein because "jurists of reason would not find it debatable as to whether this Court is correct in its procedural ruling" under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).[4]

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

        *s/ Stephanie K. Bowman*
        Stephanie K. Bowman
        United States Magistrate Judge

---

[4] Because this Court finds that the first prong of the *Slack* standard has not been met in this case, it need not address the second prong of *Slack* as to whether or not "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in any of his grounds for relief. *See Slack*, 529 U.S. at 484.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

KENNETH L. ASHCRAFT,  
    Petitioner,

vs.

WARDEN, LEBANON  
CORRECTIONAL INSTITUTION,  
    Respondent.

Case No. 1:13-cv-195

Beckwith, J.  
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981